IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-884

Filed 1 July 2026

Cumberland County, No. 24JA000329-250

IN THE MATTER OF: M.D., Jr.

Appeal by Petitioner Cumberland County Department of Social Services and the Guardian Ad Litem from an order entered 26 June 2025 by Judge Rosalyn Hood in Cumberland County District Court. Heard in the Court of Appeals 3 June 2026.

*Sydney J. Batch for respondent-appellee mother.*

*Mary McCullers Reece for respondent-appellee father.*

*Dawn M. Oxendine for petitioner-appellant Cumberland County Department of Social Services.*

*GAL Staff Attorney Brittany T. McKinney for guardian ad litem.*

WOOD, Judge.

Petitioner Cumberland County Department of Social Services ("DSS") and the Guardian Ad Litem ("GAL") appeal from the trial court's order granting Respondent-Mother's and Respondent-Father's (collectively "Parents") motion to dismiss the

juvenile petition alleging Matthew[1] to be an abused and neglected juvenile. For the reasons discussed below, we affirm the order of the trial court.

## I. Factual and Procedural Background

Matthew, born 25 April 2024, is the child of Mother and Father. Parents allege the following events occurred prior to rushing Matthew to the emergency room at Womack Hospital on 25 August 2024. Earlier the same day, Father was outside helping a neighbor when he heard Matthew crying from inside the house; Father retrieved Matthew, held him in his arms, and went back outside to finish helping the neighbor. When finished helping the neighbor, Father warmed a bottle for Matthew, but Matthew was too distracted by the TV to drink it. Father took Matthew to another room where he took a few gulps from the bottle but then began making grunting and choking sounds. Father held Matthew upright and began to pat him on the back; while doing so, Matthew vomited and became limp. Parents reported they could hear Matthew breathing enroute to Womack Hospital.

Upon arrival at the emergency room, Matthew was in cardiac arrest and not responsive. Hospital staff resuscitated Matthew; he was then intubated and airlifted to UNC-Chapel Hill Hospital ("UNC Hospital") to be cared for by the UNC Chapel Hill Beacon Team ("UNC Beacon"). Matthew was found to have sustained multiple

---

[1] A pseudonym is used to protect the identity of the juvenile pursuant to N.C. R. App. P. 42(b).

injuries. On 26 August 2024, DSS received a Child Protective Services ("CPS") referral concerning Matthew's safety.

On 9 September 2024, DSS filed a juvenile petition alleging that Matthew was an abused and neglected juvenile within the meaning of N.C. Gen. Stat. § 7B-101(1) and N.C. Gen. Stat. § 7B-101(15). An order granting nonsecure custody was entered the same day the juvenile petition was filed removing Matthew from Parents' care. Over the next nine months, the requisite hearings continuing nonsecure custody were held and Matthew was placed with paternal relatives. During this time, the UNC Beacon Team Report, also referred to as the child medical evaluation ("CME"), for the juvenile was completed which contained opinions from Matthew's medical providers about the source and nature of his injuries.

On 3 February 2025, DSS filed a notice of intent to offer evidence, the medical records from Womack Hospital and UNC Hospital, with authentication by affidavit pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(6) without any further authentication during the adjudication proceedings. On 19 May 2025, DSS filed a second notice of intent to offer evidence, specifically the CME report, with authentication by affidavit pursuant to N.C. Gen. Stat. § 8C-1, Rule 803(6) without any further authentication during the adjudication proceedings.

At the adjudication hearing on 2 June 2025, DSS brought two social workers, Mother, and Father to testify in their case in chief. Testimony by the social workers was extremely limited due to their lack of first-hand knowledge of Matthew's medical

history and medical records. The investigating social worker who filed the petition retired prior to the hearing. The social workers who testified were the investigating social worker's supervisor and a social worker who was present for the CME. Mother's and Father's testimonies were also limited, but both provided some explanation for Matthew's injuries. The trial court admitted into evidence nearly 1500 pages of medical records from Womack Hospital and UNC Hospital. Notably, DSS did not call any expert witness to testify to Matthew's medical history or medical records or to give an opinion on the nature and cause of Matthew's injuries. Further, due to the lack of expert witness available at the hearing to testify, DSS was not successful in admitting the CME report into evidence.

Testimony by the social workers revealed that DSS received a report making them aware of a child who arrived at the Womack Hospital emergency room unresponsive due to "some type of choking that may have occurred at the home." Further, the child was found to have "a subdural hematoma, a skull fracture to the right side of the skull, several healing stages of rib fractures, and a blotted spot in the right eye, hematoma"; the child was airlifted from Womack Hospital to UNC Hospital. DSS was informed that "Mom did state that she had to have help delivering the baby . . . [s]o she indicated that could have been one of the indications of injuries towards [Matthew]." One social worker testified Father performed CPR on Matthew prior to arriving to the hospital, "[b]ut he wasn't sure how to do it on an infant" and "he did his best."

DSS called Father and Mother to testify. Father testified that he did not know the primary cause of Matthew's cardiac arrest; however, when asked, "[s]o you indicated after the MRIs and CAT scans came back that you had hit your child's head on a door frame; is that correct?" he answered "Yes." Mother testified that she was advised vacuum-assisted delivery would not cause the type of injuries Matthew sustained and that to her knowledge, Matthew was born healthy. However, when asked, "You've also both been advised that even just doing CPR could have caused a lot of these injuries, correct?" Mother answered "Yes."

While the nearly 1500 pages of medical records from Womack Hospital and UNC Hospital were ultimately admitted as business records, Mother's counsel objected to their admission and accused DSS of refusing to subpoena the medical providers and "trying to use the business records self-authentication affidavit to basically backdoor in expert witness testimony to avoid having to pay expert witness fees." The trial court explained, however, that while these records were being admitted, their usefulness was limited:

> THE COURT: [O]bjection is overruled. Unfortunately, [Mother's counsel], the legislator, legislation have carved out an opportunity for these records to come in because of the burden it is on the system and pulling doctors out of much needed operation rooms, and whatever else their reasons are for those records to come in generally.
>
> Now, furthermore, if you have been given proper notice that they were coming in, then the burden shifted to you to be able to call in and subpoena anybody to cross-examine on this matter.

I will say that I'm not a medical provider, and I'm not a medical expert. So what good does it do to give me a report with all this big language that I may or may not understand. I don't even know how helpful it would be to the Department. But . . . it comes in.

At the close of DSS' evidence, Parents' counsel made a joint motion to dismiss the petition for failure to prove the allegations. Mother's counsel persuasively argued:

> [MOTHER'S COUNSEL]: Oh. Your Honor, if you just go through the allegations, basically the only thing that's been proven today is that this young infant had a medical emergency, was rushed to the hospital, and then was rushed to UNC, and had some injuries. There's been no indication of anything beyond the parents doing everything improper. And if you just go down these allegations one by one, other than proving that there was injuries and medical treatment sought, they have proved nothing. They've asked questions about what other people might have advised. But the parents were informed of some potential injuries. The parents gave their explanations for that.
>
> Your Honor, the only actual testimony as to the cause of these injuries today in this courtroom is from the parents. And all these allegations about how those injuries could not have been caused by those mechanisms are not before the Court.
>
> Your Honor, I understand we are limited in resources and economy. But at the end of the day, when you file a Petition that could potentially lead to termination of parental rights, potential criminal charges, being on the responsible individual list - - which we really heard they're not on, the matter is still pending - - Your Honor, there is a level of evidence that you must meet. It's clear, cogent and convincing. So right below reasonable doubt. Not quite that high, but clear, cogent and convincing. And Your Honor, all they've proven is that some type of injury

occurred, or some type of medical emergency and medical treatment was immediately sought. That's it. That's all they've proven.

And so, Your Honor, we contend that to prove allegations of serious physical abuse, which is what they alleged, it takes far more than that. They've alleged inflicts or allows to be inflicted upon the juvenile a serious criminal injury; creates or allows to be created a substantial risk of physical injury. Where, where is the evidence of that, Your Honor?

What we contend what they're asking you to do today is just say the injury inherently means there must have been some type of abuse and neglect. Injury, there is an explanation, they just don't like it. So injury, we don't like their explanation, abuse or neglect. Your Honor, they could have easily proven that. And I think my colleagues in the courtroom probably would have liked to. All they had to do was get the right people here to testify. At the end of the day they didn't.

So, Your Honor, we're moving to dismiss. I just don't see how there's been anywhere near enough evidence to approve, to prove abuse and neglect. So we move that it be dismissed for insufficient evidence, Your Honor.

DSS and the GAL, in contrast, argued that the burden for proving neglect and abuse was met by the admission of the medical records and testimony of Parents. Mother's counsel continued to advocate zealously that DSS failed to meet their burden of proof by stating that "if this is such a significant case then [DSS should] have the significant witnesses here to prove that." Mother's counsel further argued that Parents gave explanations for Matthew's injuries and the only thing DSS had proven was that Matthew got hurt and his parents rushed him to the hospital.

The trial court found DSS had failed to meet their burden to prove by clear and convincing evidence that Matthew was an abused or neglected juvenile. The trial court further found that, "It is not beyond reason that Respondent Father's poor attempt to provide CPR to the juvenile, as well as the hospital staff administering CPR, and the juvenile's seizure activity could have been some of the reason for the juvenile's fractured bones." On 26 June 2025, the trial court entered its order dismissing the juvenile petition.

DSS and the GAL filed notice of appeal on 2 and 18 July 2025, respectively.

## II. Analysis

DSS argues the trial court erred by acting "under multiple misapprehensions of law" when it granted Parents' motion to dismiss because involuntary dismissal of a juvenile petition is generally disfavored at this stage and is only appropriate "in the clearest of cases in which [DSS] had shown no right for relief" and "this was not the clearest of cases." DSS contends they presented medical records and testimony from social workers and Matthew's parents that show he suffered "unexplained nonaccidental trauma resulting in severe injury while in the custody of his parents"; therefore, it was erroneous to conclude that DSS failed to meet their burden to "show by clear, cogent, and convincing evidence that Matthew was abused and neglected" pursuant to N.C. Gen. Stat. § 7B-101(1) and N.C. Gen. Stat. § 7B-101(15). We disagree.

## A. Standard of Review

Cases of juvenile abuse, neglect, and dependency "are typically initiated when the local department of social services (DSS) receives a report indicating a child may be in need of protective services." *In re A.K.*, 360 N.C. 449, 454, 628 S.E.2d 753, 756-57 (2006). "DSS conducts an investigation, and if the allegations in the report are substantiated, it files a petition in district court alleging abuse, dependency, or neglect"; the next stage in such proceedings is an adjudication hearing. *Id.* at 454, 628 S.E.2d at 757.

"If DSS presents clear and convincing evidence of the allegations in the petition" at the adjudication hearing, "the trial court will adjudicate a child as an abused, neglected, or dependent juvenile." *Id.* at 454-55, 628 S.E.2d at 757. However, if DSS fails to prove the allegations in the petition, the trial court will dismiss the petition with prejudice, and the juvenile shall return to its parents. *Id.* at 455, 628 S.E.2d at 757; N.C. Gen. Stat. § 7B-807(a). Importantly, at an adjudication hearing, all the rules of evidence in civil cases apply and "statements that constitute inadmissible hearsay are not clear, cogent, and convincing evidence on which the trial court may rely." *In re A.J.*, 386 N.C. 409, 412, 904 S.E.2d 707, 711 (2024); N.C. Gen. Stat. § 7B-804.

When an appeal is made from an adjudication order we review it "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re G.C.*, 384 N.C. 62, 65, 884 S.E.2d 658, 661 (2023). Because conclusions of law are reviewed under the *de novo* standard, our

task would generally be to determine whether or not, from our own view, the findings of fact made by the trial court supported its conclusion of abuse, neglect, or dependency. *Id.* at 65-66, 884 S.E.2d at 661 (under the *de novo* standard, "the appellate court 'freely substitutes' its conclusion for the trial court's conclusion concerning whether the findings of fact support or do not support" that the child is an abused, neglected, or dependent juvenile). However, here, Parents' counsel made a motion to dismiss at the close of DSS' evidence pursuant to Rule 41(b). Because the trial court granted Parents' motion to dismiss, Parents did not present any evidence of their own. This distinction is important because it alters the standard of review we must apply.

In adjudication proceedings, dismissal under Rule 41(b) is left to the discretion of the trial court as the trier of fact. *See Walsh v. Jones*, 263 N.C. App. 582, 586, 824 S.E.2d 129, 133 (2019). "A dismissal under Rule 41(b) should be granted if the plaintiff has shown no right to relief or if the plaintiff has made out a colorable claim but the court nevertheless determines as the trier of fact that the defendant is entitled to judgment on the merits." *Id.* at 587, 824 S.E.2d at 133 (quoting *Hill v. Lassiter*, 135 N.C. App. 515, 517, 520 S.E.2d 797, 800 (1999)). This Court has stated that except in the clearest of cases, the trial court should defer judgment until the close of all evidence. *Id.* at 586, 824 S.E.2d at 132. Rule 41(b) states in relevant part:

> After the plaintiff, in an action tried by the court without a
> jury, has completed the presentation of his evidence, the
> defendant, without waiving his right to offer evidence in

the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence.

N.C. Gen. Stat. § 1A-1, Rule 41(b).

In the case *sub judice*, the motion to dismiss was made at the close of DSS' case[2] alleging insufficient evidence had been presented to support the allegations; therefore, the trial court had to "consider and weigh all competent evidence before" it as the trier of fact and the evidence was *not* to be taken in the light most favorable to DSS. *See Walsh*, 263 N.C. App. at 586, 824 S.E.2d at 133. Since the trial court rendered judgment against DSS, it was required to make findings of fact and conclusions of law to support the determination. N.C. Gen. Stat. § 1A-1, Rule 41(b).

We review a trial court's ruling on a motion to dismiss pursuant to Rule 41(b) for an abuse of discretion. *See Walsh*, 263 N.C. App. at 587, 824 S.E.2d at 133. A trial court abuses its discretion when its ruling is "manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re Will of Howell*, 294 N.C. App. 162, 171, 903 S.E.2d 197, 204 (2024) (cleaned up).

**B. Competent Evidence at the Adjudication Hearing**

On appeal, DSS and the GAL contend the trial court misapprehended the law

---

[2] Notably, as we discuss further below, DSS called both Mother and Father to testify during their case in chief.

because it required DSS to prove that Matthew's parents intentionally caused his injuries and required a medical expert to testify as to the contents of the Womack Hospital and UNC Hospital medical records that were admitted into evidence. Specifically, they contest the trial court's findings of fact thirteen and sixteen and assert that these findings demonstrate the trial court's misapprehension of law:

> 13. [DSS] introduced the juvenile's medical records into evidence; however, the Department did not offer the testimony of any medical personnel or expert to provide an explanation for the injuries.
>
> . . . .
>
> 16. Based on the evidence presented, there is no evidence that the juvenile's injuries are the result of intentional wrongdoing or other than accidental means on the part of the parents.

To the contrary, it is DSS and the GAL who misapprehend the law.

At adjudication, the burden is on DSS to prove the allegations set forth in the petition by "*clear and convincing evidence*" and the trial court, in the case *sub judice*, was tasked with *weighing* all competent evidence before it. N.C. Gen. Stat. § 7B-805 (emphasis added). Thus, "[t]he trial court must pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn from them." *Walsh*, 263 N.C. App. at 586, 824 S.E.2d at 133. Our review of the record and the trial court's findings and conclusions establish that the trial court did not abuse its discretion by finding DSS failed to meet its burden to prove to the trial court by clear and convincing evidence that Matthew should be adjudicated an

abused and neglected juvenile.

An abused juvenile is one "whose parent, guardian, custodian, or caretaker inflicts or allows to be inflicted upon the juvenile a serious physical injury by other than accidental means or creates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means." *In re L.B.*, 296 N.C. App. 498, 501, 909 S.E.2d 711, 714 (2024) (cleaned up). A neglected juvenile is one "whose parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline, has abandoned the juvenile, or creates or allows to be created a living environment that is injurious to the juvenile's welfare." *Id.* at 505, 909 S.E.2d at 716 (cleaned up).

At the hearing, the trial court explained its ruling and how it weighed the evidence presented:

> I have reviewed, to the best of my ability, the medical record submitted from Womack, considered the arguments of counsel and evidence presented in this, this case. The Court cannot at this time find evidence presented as to the actual legitimate reason for injuries to this child.
>
> The Court understands that, based on what was presented, that a child was choking; the child previously considered born healthy; and that the Respondent-Father attempted CPR, albeit not knowing how to properly do that. Once at the hospital, initially Womack, that there were some fractures to the . . . some fractures and some medical concerns concerning the child's skull, ribs, a right eye spot. And this Court's review of the medical records, which was all that's submitted to this Court without any medical personnel or expert explanation, my reading of that, it's not beyond reason that a attempted, poor attempt at CPR by

the father could very well have been some reason for some fracturing.

Then I read there that there was another two minutes. I don't know how long Dad attempted to do it, but there was another two minutes of CPR properly done, I would assume, by medical professionals. And this is on a four-month-old. There were follow-on seizure activity for this child.

But in all of that and the evidence that is presented I cannot find that there were any intentional wrongdoing on the part, on the parts of the parents. And there's been nothing else presented other than, you know, there's some fracturing, we don't know the cause. Could possibly be other than accidental means. But there's no evidence to prove what some other accidental means would be.

While DSS was successful in entering the medical records into evidence under the business record hearsay exception, the trial court rightly explained that without an expert witness the medical records usefulness was limited, stating, "I'm not a medical provider, and I'm not a medical expert. So what good does it do to give me a report with all this big language that I may or may not understand." *See* N.C. Gen. Stat. § 8C-1, Rule 803(6). Additionally, DSS attempted, but failed, to enter into evidence the CME report; a CME report is:

> "a type of exam that is very detailed and thorough that is set forth from the State Department of Social Services using a program that was established by UNC Chapel Hill." The purpose of a child medical evaluation is to determine the child's needs, and to diagnose and treat the child accordingly.

*State v. Corbett*, 269 N.C. App. 509, 532, 839 S.E.2d 361, 383 (2020).

On appeal, DSS argues and is correct that this Court has "previously upheld abuse adjudications where a child sustains unexplained, non-accidental injuries." *In re L.Z.A.*, 249 N.C. App. 628, 637, 792 S.E.2d 160, 168 (2016). However, this Court explained in *In re L.B.*:

> "This Court has previously upheld adjudications of abuse where a child sustains non-accidental injuries, even where the injuries were unexplained, where clear and convincing evidence *supported the inference* that the respondent-parents inflicted the child's injuries or allowed them to be inflicted." However, "in each of these cases, though the exact cause of the child's injury was unclear, the trial court's findings of fact—or other evidence in the record—*supported the inference* that the respondent-parents were responsible for the unexplained injury."

*L.B.*, 296 N.C. App. at 502, 909 S.E.2d at 714 (quoting *In re K.L.*, 272 N.C. App. 30, 39-40, 845 S.E.2d 182, 190-91 (2020)). The record in the case *sub judice* is devoid of clear and convincing evidence that Matthew's injuries "are the result of intentional wrongdoing or other than accidental means on the part of the parents." While DSS alleged in its petition that "[d]ue to the severity of the injuries there is a high concern that the juvenile suffered these injuries by non-accidental trauma," DSS did not present evidence that allowed even the inference to be made that Matthew's injuries were caused by non-accidental means *by his parents*.

At the adjudication hearing, DSS called two social workers—neither of whom filed the juvenile petition or acted as the main investigating social worker—and Matthew's parents to testify. It is important to recognize in this case that because

Mother and Father testified as DSS' witnesses, the explanations they provided for Matthew's injuries are part of DSS' case in chief. Thus, while DSS alleged in their petition that "[d]ue to the severity of the injuries there is a high concern that the juvenile suffered these injuries by non-accidental trauma," they provided testimony that Matthew's injuries were caused by *accidental* means but provided no testimony to explain why these injuries might suggest they were the result of non-accidental means or inflicted by his parents.

The GAL on appeal identifies several places within the nearly 1500 pages of medical records, that were properly admitted as business records, as support for Matthew's injuries being the result of non-accidental means and argues the trial court did not "resolve[] the conflicting evidence as the factfinder." However, the trial court's explanation shows that it did consider and weigh the evidence; the trial court reviewed the medical records to the best of its ability but ultimately gave greater weight to the testimony of Mother and Father, DSS' own witnesses, who offered explanations for Matthew's injuries. DSS may not have believed Parents' explanations, but DSS did not call *anyone*, specifically a medical provider or expert witness, who could testify to the contents of the medical records or offer any opinion about what the records might reveal about the nature of Matthew's injuries. The trial court did not misapprehend the law by concluding it could not interpret the medical records without an expert medical witness testifying. The medical records delineate Matthew's injuries, but only an expert could have interpreted the records

to give an opinion as to the proximate cause of the injuries; without an expert's opinion, the trial court was left with only Parents' explanation of the injuries. *See Hawkins v. Emergency Med. Physicians of Craven Cnty., PLLC*, 240 N.C. App. 337, 342, 770 S.E.2d 159, 163 (2015) (stating the requirement that a "medical negligence plaintiff must rely on expert opinion testimony to establish proximate causation of the injury" and noting that expert witness testimony is generally necessary to prove causation when matters go beyond the knowledge of a layman). As Mother's counsel stated at the hearing, "there is an explanation, [DSS and the GAL] just don't like it."

## III. Conclusion

For the foregoing reasons, we hold the trial court did not abuse its discretion by granting Parents' motion to dismiss the petition alleging Matthew to be an abused and neglected juvenile because the ruling is not manifestly unsupported by reason. The trial court acted within its discretion by determining DSS failed to meet its burden of proof by clear and convincing evidence. Therefore, we affirm the order of the trial court dismissing the juvenile petition.

AFFIRMED.

Judges CARPENTER and FLOOD concur.